UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD DUDAS, | ) | Case No. 1:09CV1177 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| RICH GANSHEIMER, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Pursuant to 28 U.S.C. §2254, Petitioner Ronald Dudas, a prisoner in custody at the Lake Erie Correctional Institution,[1] seeks review of his Lake County Ohio Court of Common Pleas conviction for four counts of intimidation in violation of Ohio Revised Code ("O.R.C") §2921.03, one count of retaliation in violation of O.R.C. §2921.05, one count of engaging in a pattern of corrupt activity in violation of O.R.C. §2923.32, one count of tampering with records in violation of O.R.C. §2913.42, one count of forgery in violation of O.R.C. §2913.31, one count of theft in violation of O.R.C. §2913.02, one count of uttering in violation of O.R.C. §2913.31, one count of securing writings by deception in violation of O.R.C. §2913.43, and one count of telecommunications fraud in violation of O.R.C. §2913.05.  ECF Dkt. #1; *see also* ECF Dkt. #6, Ex. 5.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice:

---

[1] Although the petition indicates that Petitioner is being held in custody at the Lake Erie Correctional Institution, Respondent's return of writ does not acknowledge or dispute custody. ECF Dkt. #6; *See* Rules Governing §2254 Cases 5(b) ("The answer must address the allegations in the petition."). A search of the Ohio Department of Rehabilitation and Correction's website indicates that Petitioner is now in custody at Trumbull Correctional Institution.  *See* (Offender search for Dudas, Ronald) http://www.drc.ohio.gov/OffenderSearch/Search.aspx (*last visited* Oct. 1, 2010). Therefore, it appears that Bennie Kelly, Warden of Trumbull Correctional Institution, should be named as the respondent in this case.  *See* http://www.drc.ohio.gov/web/InstAddr.htm (*last visited* Oct. 1, 2010).

I.     **SYNOPSIS OF THE FACTS**

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), cert. denied, 119 S.Ct. 2403 (1999). As set forth by the Eleventh District Court of Appeals, the facts are:

[¶2]  On October 19, 2005, Cuyahoga County Common Pleas Judge David T. Matia sentenced appellant to eleven months in prison subsequent to his guilty plea to felony theft in Cuyahoga County Common Pleas Court. Judge Matia also sentenced appellant to six months in prison for a probation violation, which the court ordered to be served consecutively to the sentence on the theft conviction.

[¶3]  Immediately after appellant was taken by sheriff's deputies to the Cuyahoga County Jail, appellant started making collect telephone calls to his girlfriend Jennifer Bost discussing his sentencing. On October 19, 2005, he told her he was "gonna visit [North Olmsted Police Detective Simon Cesareo] when "I'm out of here." He said, "I want [Det. Cesareo] sodomized." This detective had investigated many of the fraud cases over the past ten years that had resulted in convictions against appellant.

[¶4]  On October 21, 2005, appellant called Ms. Bost again. While discussing his sentence with her, he said he "was gonna take that gun from the deputy and shoot the fucker [Judge Matia] in the head."

[¶5]  Between October 19, 2005 and October 21, 2005, appellant also discussed his sentencing with some of his fellow inmates. He told inmate Daniel Whitehead that because Judge Matia gave him almost the maximum sentence, he took it personally and wanted Judge Matia to be killed and wanted Detective Cesareo to be hurt. He offered to pay Whitehead $ 10,000 to accomplish this, but Whitehead declined.

[¶6]  On October 22, 2005, appellant told inmate Robert Harmon he hated Judge Matia and wanted him killed and wanted Detective Cesareo's legs broken. Appellant told him he would pay him $ 500 now, $ 5,000 when Harmon got out of jail, and a final $ 5000 when Harmon had done it.

[¶7] Harmon later contacted Cleveland Police Homicide Detective Hank Veverka and told him about appellant's threat. The detective caused Judge Matia to be notified. Harmon agreed to wear a recording device. On October 25, 2005, appellant again discussed the murder plot with Harmon, only this time the conversation was tape-recorded. Appellant told Harmon how he would get the money; that he guaranteed Harmon he would be paid; and that he wanted both jobs done. Appellant later called one of his associates Phil Rossiter and told him to give the funds to Harmon.

[¶8] On November 11, 2005, in a telephone conversation to Ms. Bost, appellant told her he "wanted to beat the shit out of Don Galvin [one of appellant's victims] because [he] had turned [appellant] in."

[¶9] On April 18, 2006, appellant was indicted by the Cuyahoga County Grand Jury with 14 counts of intimidation, felonies of the third degree, in violation of R.C.

2921.03; 15 counts of retaliation, felonies of the third degree,  in violation of R.C. 2921.05; two counts of conspiracy to commit aggravated murder, felonies of the first degree, in violation of R.C. 2903.01 and 2923.01; attempted aggravated murder, a felony of the first degree, in violation of R.C. 2903.01 and 2923.02; and attempted felonious assault on a police officer, a felony of the second degree, in violation of R.C. 2903.11 and 2923.02.

[¶10]  Further, between June, 2000 and April, 2002, appellant formed and carried on an enterprise for the ostensible purpose of providing loans to individuals in desperate financial straits, but with the true purpose of stealing their funds and real estate. Appellant employed various schemes to accomplish this objective. Many of appellant's victims were near foreclosure, and appellant took advantage of their need by stealing the last of their assets. Appellant recruited associates to act as straw borrowers and purchasers and created spurious mortgages and loan documents to obtain loans from lenders. He then stole the proceeds from these loans.

[¶11]  Pursuant to this enterprise, appellant forged signatures on conveyance instruments and mortgages and falsified loan applications in order to obtain loans. He prepared and filed  fraudulent mechanics' liens against properties, and falsified documents that allowed him to collect on them. He stole in excess of one million dollars from multiple victims. The indictment listed 35 victims. He stole more than $ 100,000 apiece from 14 separate victims.

[¶12]  Appellant would often convince victims, many of whom were elderly, to give him their money so he could "invest" it. He would then steal the funds and use them for his own purposes. When these victims later wanted their money back, he would purport to transfer properties to them in exchange, but he never recorded the deeds. On other occasions, as part of the loan application process, appellant would have the victims quitclaim their properties to him. He then sold the properties and kept the sale proceeds.

[¶13]  On September 26, 2006, appellant was indicted in a 135-count indictment for engaging in a pattern of corrupt activity, a felony of the first degree, in violation of R.C. 2923.32; conspiracy to engage in a pattern of corrupt activity, a felony of the second degree, in violation of R.C. 2923.01 and 2923.32; 30 counts of tampering with records, felonies of the third degree, in violation of R.C. 2913.42; 10 counts of securing  writings by deception, felonies of the third or fourth degree, in violation of R.C. 2913.43; six counts of telecommunications fraud, felonies of the third or fourth degree, in violation of R.C. 2913.05; 46 counts of forgery, felonies of the third or fourth degree, in violation of R.C. 2913.31; 21 counts of theft by deception when the value of the property stolen was between $ 5,000 and $ 100,000, felonies of the fourth degree, in violation of R.C. 2913.02; 14 counts of theft by deception when the value of the property stolen was $ 100,000 or more, felonies of the third degree, in violation of R.C. 2913.02; theft beyond the scope of consent when the value of the property stolen was $ 100,000 or more, a felony of the third degree, in violation of R.C. 2913.02; and six counts of money laundering, felonies of the third degree, in violation of R.C. 1315.55.

[¶14]  While these two cases were pending in the Cuyahoga County Common Pleas Court, appellant filed a motion for change of venue, arguing that he could not receive a fair trial in Cuyahoga County due to pre-trial publicity. All Cuyahoga County Common Pleas judges were disqualified by the Ohio Supreme Court, and the cases were assigned to Judge  Eugene Lucci of the Lake County Common Pleas Court pursuant to order entered on August 24, 2006.

-3-

[¶15]  The jury trial in the murder conspiracy case began on October 17, 2006. The prosecutor gave his opening statement, and several key witnesses, including Judge Matia and Det. Cesareo, testified. Then, after two days of trial, on October 19, 2006, appellant entered a guilty plea in both cases. In Cuyahoga County Common Pleas Court Case No. 479861 (Lake County Common Pleas Court Case No. 06CR000560), appellant pleaded guilty to four counts of intimidation, felonies of the third degree, and one count of retaliation, a felony of the third degree. In Cuyahoga County Common Pleas Court Case No. 486200 (Lake County Common Pleas Case No. 06CR000700), appellant pleaded guilty to one count of engaging in a pattern of corrupt activity, a felony of the first degree; one count of tampering with records, a felony of the third degree; one count of forgery, a felony of the fourth degree; one count of theft, a felony of the third degree; one count of uttering, a felony of the fourth degree; one count of securing writings by deception, a felony of the third degree; and one count of telecommunications fraud, a felony of the fourth degree. During this plea hearing, the prosecutor stated on the record that as part of the plea bargain, he would limit his sentence recommendation to ten years in prison.

[¶16]  The matter was set for sentencing on December 1, 2006 at 9:00 a.m. Earlier that morning appellant filed a pro se motion to withdraw his guilty plea. When the trial court brought this motion to defense counsel's attention, he stated, "we're gonna withdraw that motion. I'm gonna withdraw it on behalf of the Defendant. So we don't have to have a hearing on it and be heard. We'll withdraw the motion to withdraw the plea." When asked by the court if he agreed with these remarks, appellant said he did.

 [¶17]  By way of mitigation, appellant's counsel argued that appellant is bi-polar and that he committed his schemes to defraud his victims because "he was upset *** from the sentence he received from Judge Matia." Appellant attempted to excuse his plot to murder Judge Matia by saying that it was only after other inmates told him his sentence in 2005 was unfair that appellant began to plan the Judge's murder.

[¶18]  Judge Matia attended the sentencing hearing and spoke as a victim. He asked the court to impose more than ten years imprisonment. He said ten years would demean the seriousness of appellant's life work, which has been to defraud and steal from his victims. Judge Matia listed appellant's many convictions. Appellant had been convicted for theft in Lyndhurst, Eastlake, and Mentor. In 1995, appellant pleaded guilty to fraud in the Cuyahoga County Common Pleas Court, and was sentenced to one year in prison. Following this sentence, appellant filed a motion for judicial release that was denied by Cuyahoga County Common Pleas Judge Thomas Patrick Curran. In revenge, appellant took out a contract on Judge Curran to have his hand broken for $ 2,500.

[¶19]  Judge Matia told the court that in 1995, appellant became angry with another Cuyahoga County Common Pleas Judge Timothy McGinty due to remarks Judge McGinty had made while sentencing appellant's then-girlfriend Patricia Boychuk in a criminal case she had in his court. Appellant tracked down the Judge to a health club where the Judge works out in downtown Cleveland. Appellant joined the club so he could get near to the Judge. While Judge McGinty was using the bench press, appellant suddenly appeared over him and grabbed the bar Judge McGinty was using, attempting to harass and intimidate him.

[¶20]  Thereafter, in 2001, appellant was convicted in the Cuyahoga County Court of Common Pleas for the unauthorized practice of law and theft.

[¶21] Judge Matia said that appellant grew up in a family that encourages intimidation of public officials. The Judge said that on the day appellant pleaded guilty in Judge

-4-

Lucci's court room, appellant's brother Richard Dudas gave Judge Matia the finger.

[¶22]  Judge Matia said appellant actually delivered the funds to the person he believed would kill him; however, the funds were delivered to a sheriff's deputy and not, as appellant intended, to a real hit man.

[¶23] Several of appellant's other victims also spoke at the sentencing. They described how they and their families had been destroyed financially and emotionally by appellant. Their credit was ruined and many were forced into bankruptcy. Cheryl Golic said that appellant had filed false liens on two houses she and her husband owned totaling $ 32,000. While appellant's guilty plea in the instant case was being negotiated, appellant's counsel assured the prosecutor appellant had released the fraudulent liens. Following the plea, the prosecutor discovered from the Golics that appellant did not release the liens and in fact refused to do so. The liens were mechanic's liens wherein appellant swore in affidavits that the Golics owed him money for work he had done on two properties that he never performed.

[¶24] Another victim Bruce Limmer testified appellant sold him a house in Parma for $ 80,000, only to find out that appellant forged the owners' names on the deed as the sellers and never transferred the property to him. Appellant told Mr. Limmer the couple living at the house, the Campbells, were tenants who had defaulted on their rent and told Mr. Limmer to evict them. When he attempted to do so, he learned the Campbells owned the property and that he had been duped.

[¶25]  The Campbells were present and told the court that appellant had stalked them, burglarized their home, and attempted to physically harm them.

[¶26]  Another victim Dan Mullen testified that appellant had defrauded him and his son out of $ 500,000, causing Dan to experience the "shame and devastation" of bankruptcy. Appellant's fraud caused Dan's wife to experience a complete mental breakdown.

[¶27]  The prosecutor told the court that in the case of *Cuyahoga County Bar Association v. Boychuk*, 79 Ohio St.3d 93, 1997 Ohio 403, 679 N.E.2d 1081,  the Supreme Court suspended Attorney Patricia Boychuk's license to practice law. She had been appellant's girlfriend. The Board of Commissioners on Grievances and Discipline of the Supreme Court found that she was a battered woman and that appellant had battered her. The Board found Boychuk was addicted to cocaine and that appellant had supplied the drug to her. Beginning in 1992, appellant took over her law practice without her being aware of what was happening. Appellant falsely held himself out as an attorney, and accepted fees to perform legal work for Boychuk's clients.

[¶28]  The prosecutor told the court that appellant has attempted to intimidate his victims to prevent them from coming forward. He said that when appellant is caught by his victims, he typically becomes loud and intimidating, threatening to physically injure them if they come forward.

[¶29]  The prosecutor said that while appellant was on probation from Cuyahoga County Common Pleas Judge Richard McMonagle for the unauthorized practice of law and theft in 2001, he stole money or the homes of John and Barbara Hawkins, Cynthia Woide, Evelyn Morman, Mark and Dorothy Fowler, Randy Vecchio, Debbie and Jack Dell, Bruce Limmer, Pat and Mark Campbell, Denice Bates, Linda Williams, Dan Mullen, Steven Ruben, Dan Emrisko, Dawn Clark, Kerry Jorgenson, Gerald Markovic, and J.D. Goddard.

-5-

[¶30]  In arguing for a reduced sentence, appellant's counsel stated that "we had an agreement of not less than 5 nor more than 10 years in the penitentiary. *** I'm gonna ask that the Court give him a minimum sentence of 5 years. Per the agreement that I have with the State - - not with the Court, but with the State, that that be done."

[¶31]  Later, during the sentencing hearing, the prosecutor said, "But Your Honor, he has to receive a prison sentence. It's gotta be long, and it's gotta be at least 10 years." There was no objection to this statement of the prosecutor.

[¶32]  After the prosecutor spoke, appellant told the court, "Whatever you tell me I have to do, whether it's 1 years [sic] or 100 years, Your Honor, I'm gonna do that. Because I owe it to these people, I owe it to this community and I owe it most to my family."

[¶33] The court carefully considered the purposes and principles of felony sentencing under R.C. 2929.11. It considered the seriousness and recidivism factors in R.C. 2929.12. The court noted the advanced age of several of appellant's victims. The victims uniformly suffered serious psychological harm in both cases and in the racketeering case, extreme economic harm. Appellant held a position of trust and the offenses were related to that position. Further, his occupation facilitated the offenses. The court noted appellant acted as part of organized criminal activity in both cases.

[¶34]  The court noted that several recidivism factors were present and that unless he was stopped, appellant would continue to commit crimes. Many of the crimes were committed while appellant was under community control sanctions to other judges. The court noted appellant has a lengthy history of criminal convictions, many of which are similar to those involved in the cases sub judice. He was convicted of theft in Lyndhurst in 1979 and received one year probation. In 1987, he was convicted of three counts of theft in the Willoughby Municipal Court and placed on probation. In 1992, appellant pleaded guilty to theft in the Lake County Common Pleas Court for an offense he committed in Mentor and received probation.

[¶35] In 1995, appellant pleaded guilty in the Cuyahoga County Common Pleas Court to three counts of theft, felonies of the third degree.  Appellant was sentenced by Judge Patrick Curran to one year in prison. While appellant was in prison, he filed a pro se motion for shock probation. Judge Curran denied the motion, and appellant decided to seek revenge against the Judge. Appellant solicited fellow inmate Daniel Ott, a criminal informant, to break Judge Curran's hand and offered Ott $ 2,500 to do it. Ott contacted Detective Thomas Doyle of the Eastlake Police Department and advised him of appellant's efforts to injure Judge Curran. Det. Doyle asked Ott for written proof, and Ott obtained a note from appellant instructing his brother Richard Dudas to pay Ott $ 2,500 once Ott had handled the matter. Appellant was found guilty by a jury of intimidation against the Judge and sentenced to two years in prison. *State v. Dudas* (1997), 1997 Ohio App. LEXIS 2369.

[¶36]  In 2001, appellant was convicted of the unauthorized practice of law in the Cuyahoga County Common Pleas Court. He was given one year probation and "ordered not to participate in any financial institution or related fields." He began another financial transaction the very next day.

[¶37]  On September 7, 2004, appellant was convicted of a theft he committed in North Olmsted. He was put on probation by Judge David Matia. Appellant's probation was terminated due to a new offense he committed in North Olmsted in 2005. Judge Matia sentenced him to 11 months in prison for that offense plus an additional six months on a probation violation. It was in response to that sentence that appellant

-6-

plotted to murder Judge Matia.

[¶38]  The trial court noted that appellant has not responded well to previously imposed sanctions. He had not obtained treatment for his alcohol and drug abuse. The court stated it did not believe appellant was genuinely remorseful. The court stated appellant had an anti-social personality in that he had seriously damaged so many people, and that he fit in the category of psychopath.

[¶39]  In Lake County Common Pleas Court Case No. 06CR000560, the court sentenced appellant on each of four counts of intimidation to five years, each term to run concurrent to the others. The court sentenced him to five years on the retaliation count, to be served consecutively with the intimidation counts, for a total of ten years.

[¶40]  In Lake County Common Pleas Court Case No. 06CR000700, the court sentenced appellant to ten years for engaging in a pattern of corrupt activity, five years for tampering with records, 18 months for forgery, one year for theft, 18 months for uttering, five years for securing writings by deception, and 18 months for telecommunications fraud. The prison terms imposed for forgery, theft, uttering, and telecommunications fraud were to be served concurrent to each other and concurrent to the terms imposed for engaging in a pattern of corrupt activity, tampering with records, and securing records by deception. The terms for engaging in a pattern of corrupt activity, tampering with records, and securing records by deception were to be served consecutive to each other, for a total of 20 years in prison, and consecutive to the prison term in Lake County Common Pleas Court Case No. 06CR000560, for a total of 30 years in prison.

[¶41]  On December 5, 2006, appellant filed another pro se motion to withdraw his guilty plea which the trial court denied by order, dated January 3, 2007.

ECF Dkt. #6, Ex. 16 at ¶¶2-41.

## II.  PROCEDURAL HISTORY

### A.  State Court Conviction

On April 19, 2006, the prosecuting attorney for Cuyahoga County Ohio filed an indictment charging Petitioner with fourteen counts of intimidation, fifteen counts of retaliation, two counts of Conspiracy to Commit Aggravated Murder, one count of Attempted Aggravated Murder, and one count of Attempted Felonious Assault.  ECF Dkt. #6, Ex. 1.  On September 22, 2006, the prosecuting attorney for Cuyahoga County Ohio filed a second indictment charging Petitioner with an additional 132 counts, including engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, tampering with records, securing writings by deception, telecommunications fraud, forgery, theft, money laundering, theft by deception, and theft beyond the scope.  ECF Dkt. #6, Ex. 2.

The Cuyahoga County Court of Common Pleas reassigned the case to the Lake County Court of Common Pleas pursuant to a reassignment by the Supreme Court of Ohio. ECF Dkt. #6, Ex. 3, 4.

On October 17, 2006, the jury trial in the murder conspiracy case began. ECF Dkt. #16 at ¶15. After two days of trial, appellant entered a guilty plea resolving both cases. *Id*.; ECF Dkt. #6, Ex. 5,6. Petitioner pled guilty to one count of retaliation, one count of engaging in a pattern of corrupt activity, one count of tampering with records, one count of forgery, one count of theft, one count of uttering, one count of securing writings by deception, and one count of telecommunications fraud. ECF Dkt. #6, Ex. 5, 6. Petitioner then filed a *pro se* motion seeking to withdraw his guilty plea on the belief that several witnesses were prepared to testify on his behalf. ECF Dkt. #6, Ex. 7. At the sentencing hearing, Petitioner's attorney withdrew the motion, and Petitioner assented on the record. ECF Dkt. #6, Ex. 21 (Sentencing Hearing Transcript (hereinafter, "Tr.")) at 4. The trial court then ordered Petitioner to serve an aggregate term of 30 years in prison. ECF Dkt. #6, Ex. 8,9.

### B. Ohio Court of Appeals

On December 15, 2006, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eleventh District. ECF Dkt. #6, Ex. 10, 11. On January 8, 2007, Petitioner filed a motion to consolidate the appeals from the two trial court cases. ECF Dkt. #6, Ex. 12. On January 26, 2007, the appellate court granted the motion and consolidated the appeals. ECF Dkt. #6, Ex. 13. On May 16, 2007, Petitioner filed an appellate brief alleging the following assignments of error:

I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT SENTENCED HIM TO A PRISON TERM BASED ON THE STATE'S RECOMMENDATION IN VIOLATION OF A PLEA AGREEMENT.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA IN VIOLATION OF HIS DUE PROCESS RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

III.    THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTIONS 2, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT SENTENCED HIM CONTRARY TO R.C. 2929.11(B).

IV.    THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM PRISON TERMS IN VIOLATION OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTION.

V.    THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM PRISON TERMS IN VIOLATION OF HIS RIGHT TO DUE PROCESS.

VI.    THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM PRISON TERMS BASED ON THE OHIO SUPREME COURT'S SEVERANCE OF THE OFFENDING PROVISIONS UNDER FOSTER, WHICH WAS AN ACT IN VIOLATION OF THE PRINCIPLE OF SEPARATION OF POWERS.

VII.    THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM PRISON TERMS CONTRARY TO THE RULE OF LENITY.

VIII.    THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM PRISON TERMS WHEN THE RULE OF LENITY DICTATED A LESSER PENALTY.

ECF Dkt. #6, Ex. 14.

On December 17, 2007, the Ohio Court of Appeals affirmed Petitioner's conviction.  ECF Dkt. #6, Ex. 16.

### C.    Supreme Court of Ohio

On January 30, 2008, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #6, Ex. 17. Petitioner filed a memorandum in support of jurisdiction, raising the following propositions of law:

1.    When a trial court relies upon the sentencing recommendation of a prosecutor contrary to the recommendation agreed upon in the plea agreement, the sentence violates the defendant's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States constitution and Sections 10 and 16, Article I of the Ohio Constitution.

2.    When a trial court imposes a sentence unreasonably larger than the sentence agreed to in the plea agreement and not proportional to the crimes committed,

> the sentence violates the defendant's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
>
> 3.     A trial court violates an individual's rights under the Due Process and Ex Post Facto Clauses of the Ohio and United States Constitutions when it sentences the individual to a more-than-the-minimum, consecutive prison terms that were not available to the court at the time the individual committed the offense.
>
> 4.     A trial court violates an individual's rights to Due Process when it sentences the individual to a more-than-the-minimum, consecutive prison terms with no additional findings made by a jury and when the individual had no actual or constructive notice of those possible sentences.
>
> 5.     A trial court violates the principle of separation of powers provided in the United States and Ohio Constitutions by sentencing an individual to a more-than-the-minimum, consecutive prison term based on this Court's severance of the offending statute provisions under Foster.
>
> 6.     A trial court violates the rule of Lenity when it imposes a more-than-the-minimum, consecutive prison term upon an individual where the Rule of Lenity dictated a lesser penalty.
>
> 7.     A trial court's decision to sentence an individual to a more-than-the-minimum, consecutive prison term is contrary to the intent of the Ohio legislatures who drafted sentencing provisions with the clear intent of limiting judicial discretion to impose such sentences.

ECF Dkt. #6, Ex. 18 at i-ii.

On June 9, 2008, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. ECF Dkt. #8, Ex. 14.

**D.**     **Federal Petition for Writ of Habeas Corpus**

On May 21, 2009, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner raises the following ground for relief:

> Ground One:    When a prosecutor breaches a plea agreement by recommending a sentence that is much longer than the agreement, the subsequent sentence violates the defendant's right to due process. Fifth and Fourteenth Amendments to the United States Constitution. *Santobello v. New York*, 404 U.S. 257 (1971).

ECF Dkt. #1 at 16.

On October 16, 2009, Respondent filed a return of writ. ECF Dkt. #6. On March 8, 2010, Petitioner filed a traverse. ECF Dkt. #11.

### III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

#### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  Respondent does not contend that the instant petition is time-barred.  Therefore, the undersigned will not address the issue further.

#### B.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

-11-

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, the Sixth Circuit set forth the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has

declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

    (1)    whether the petitioner failed to comply with an applicable state procedural rule;

    (2)    whether the state courts actually enforced the state procedural sanction;

    (3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

    (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

-13-

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

-14-

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

-15-

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

    1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221

-16-

(1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS

### A.    GROUND ONE

In Ground One, Petitioner contends that the prosecution breached the plea agreement by recommending a sentence longer than the one agreed upon by the parties.  ECF Dkt. #1, Ex. 16. Respondent contends that this claim is procedurally defaulted because Petitioner did not object to the prosecutor's statement at the time of sentencing.  ECF Dkt. #6 at 10.

Petitioner contends that he and the State agreed to recommend that he receive not less than five and not more than ten years in prison.  ECF Dkt. #11 at 2 citing Tr. at 16[2].  Petitioner contends that the prosecuting attorney violated the plea agreement by arguing that he "must suffer a severe, severe punishment for [the acts that he committed]" and must receive "*at least* 10 years [of imprisonment]."  ECF Dkt. #11 at 2 citing Tr. at 55, 61-62 (emphasis in Petitioner's brief, not in

---

[2]    Notably, Petitioner cites his own representation of the plea agreement.

transcript).   Petitioner contends that the prosecutor's request for "at least" 10 years constituted a breach of the plea agreement.  ECF Dkt. #11 at 3.

The undersigned will analyze the purported procedural default pursuant to *Maupin*.  Petitioner does not dispute that the first three prongs of *Maupin* have been satisfied.  ECF Dkt. #11 at 7-8. Nevertheless, the undersigned notes that those prongs have been satisfied.  Petitioner failed to comply with a procedural rule, namely the contemporaneous objection rule.  *State v. Williams*, 364 N.E.2d 1364, 1367 (Ohio 1977) ("This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.") *superseded on other grounds by State v. Gillard*, 533 N.E.2d 272 (Ohio 1988); *State v. Williams*, No. 05CA008804, 2006 WL 2395218 at *8 (Ohio App. 9 Dist., Aug. 21, 2006) ("[a]s Defendant failed to raise any objection below, let alone an objection specifically raising a constitutional challenge, he is precluded from raising such an argument for the first time on appeal.").  Here, Petitioner failed to object to the purported breach at the time of the sentencing hearing.

The appellate court enforced the procedural bar, pointing to a case where a failure to object to a breach of a plea agreement constituted a waiver of that claim.  ECF Dkt. #16 at ¶¶46-56 citing *Teeple v. U.S.*,  15 Fed.Appx. 323, 2001 WL 873644 (6th Cir. 2001), unreported.  The court proceeded to conduct a plain error analysis, but a plain error review by a state court does not constitute a waiver of the state court's procedural bar. *White v. Mitchell,* 431 F.3d 517, 525  (6th Cir. 2005).

Also, Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice.   *White*, 431 F.3d at 525.  Therefore, the remaining issue is whether Petitioner has shown cause and prejudice.

With respect to cause, Petitioner contends that:

the practical realities of plea bargaining and sentencing serve as the basis for cause. Once the State asserted to the trial court that Mr. Dudas should be sentenced to a term

-18-

> of greater than ten years, the damage was done. Efforts on the part of defense counsel to object to the State's remarks would have been futile, because the trial court already heard the prejudicial recommendation. The breach rang a bell that could not be unrung.

ECF Dkt. #11 at 7.  This argument is meritless because judges are charged with determining questions of law and are considered capable of separating prejudicial statements and evidence from probative evidence.  *Cf. U.S. v. Hall*, 202 F.3d 270 (table), No. 98-6421, 2000 WL 32010 at *2-*3 (6th Cir. Jan 4, 2000).  In an analogous situation, the Sixth Circuit has noted that "[i]n bench trials, the application of the unfair prejudice portion of Rule 403 [3] has been seen as an unnecessary and 'useless procedure.' "  *Id.*  The Sixth Circuit relied in part on *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir.  1981), which held that "[t]his portion of Rule 403 has no logical application to bench trials. . .Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision."  Likewise, the *Hall* court relied upon a Fourth Circuit case, in which the appellate court stated: "For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."  *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir.1994), *cited with approval Hall*, 2000 WL 32010 at *3.

The same observations and reasoning would apply here.  Petitioner has not shown that the trial judge was incapable of considering a legal argument pertaining to the purported impropriety of the prosecutor's statement.  He has not shown that the judge was incapable of excluding improper influences from his mind.  The prosecutor's request was not so prejudicial that the trial judge would

---

[3] Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

have been unable to disregard it; he asked for at least 10 years.  Even if the prosecutor strayed from the plea agreement by making this statement, there is no indication that the statement was so prejudicial that the trial judge would have been unable to make a legal determination concerning the breach of the plea agreement and to remedy the breach at the time of sentencing.

The appellate court noted that the trial judge "was fully aware of the plea bargain" and that "[d]uring the plea hearing, the prosecutor acknowledged on the record the limits of his recommendation under the plea bargain."  ECF Dkt. #6, Ex. 16 at ¶93.  The appellate court also noted an extended dialogue between the trial judge and Petitioner regarding the non-binding effect of the plea agreement on sentencing.  ECF Dkt. #6, Ex. 16 at ¶¶57-93.  Therefore, this Court should not be persuaded by Petitioner's unsupported contention that an objection would have been futile. If the metaphorical bell was truly incapable of being unrung, and the trial judge was incapable of disregarding the prosecutor's statement, then the trial judge could have considered recusing himself. *See* Ohio Code of Jud. Conduct Canon 3(E) providing non-exhaustive list of instances where recusal of a trial judge is required), *superseded* March 1, 2009[4].  However, Petitioner never raised an objection prompting the trial judge to consider the necessity of recusal or another appropriate remedy.  Instead, Petitioner failed to preserve the issue for appeal and improperly placed the burden on the appellate court to consider the issue for the first time.

Petitioner was obligated to raise an objection and provide the trial court with an opportunity to rule upon the issue concerning the purported breach of the plea agreement.  His failure to do so is attributable only to himself and is not excusable.  Accordingly, the undersigned recommends that the Court find cause to be lacking.

Petitioner must also demonstrate prejudice by demonstrating actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  To this end, Petitioner contends that he "was actually prejudiced by a longer sentencing recommendation **that resulted in a longer sentence**."  ECF Dkt. #11 at 8

---

[4]        These rules were in effect when Petitioner was sentenced on December 1, 2006.  *See* ECF Dkt. #6, Ex. 8,9.

(emphasis added). There is absolutely no indication that the prosecutor's statement impacted the judge's determination. Before the trial judge accepted Petitioner's guilty plea, he conducted a lengthy colloquy with Petitioner where he explained that he was not a party to the agreement between the prosecuting attorney and Petitioner, that the judge was not bound by that agreement, and that he could impose a sentence of up to 54 ½ years of imprisonment. ECF Dkt. #6, Ex. 16 at ¶¶58-92. As early as the change of plea hearing, the trial judge indicated that a possibility existed that he would depart from the agreed upon sentence. The trial judge noted on the record that he was aware of the agreement limiting the recommendation to no more than 10 years. *Id*. at ¶¶61-62, 85. Petitioner's attorney specifically called the agreement to the trial judge's attention during the sentencing hearing. Tr. at 16. The prosecutor referred to the plea agreement immediately before he asked that Petitioner receive "at least 10 years" of imprisonment. *Id*. at 61. Finally, the trial judge articulated his own reasons, entirely independent of the prosecutor's recommendation, for imposing a 30 year aggregate sentence. The trial judge explained his sentence thoroughly and principally relied on the nature of the offenses, Petitioner's past offenses, the impact on the victims, and the fact that many of the offenses were committed while Petitioner was on probation. ECF Dkt. #6, Ex. 21 at 65-72. There is no indication that the prosecutor's statement caused the trial judge to impose a sentence he otherwise would not have imposed.

It is important to note that the United State Supreme Court held in *U.S. v. Santobello* that a sentencing plea phase of the criminal justice process must be attended by safeguards to insure that the defendant received what is reasonably due in the circumstances. 404 U.S. 257, 263 (1971). The *Santobello* Court went on to hold:

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

*Id*. at 262-63.

-21-

While the issue in *Santobello* concerned the prosecutor's misconduct, the issue here concerns prejudice resulting from a procedural default and whether actual harm resulting from the alleged constitutional violation.  *Magby*, 741 F.2d at 244.  Petitioner has shown no actual harm in this case.  "[H]e must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *U. S. v. Frady,* 456 U.S. 152, 170  (1982) (emphasis in original).  Here, the trial judge noted his knowledge of the plea agreement on the record, and he cited only his own reasons for imposing a 30 year aggregate sentence.  Even though Petitioner bargained for a recommendation of a 5-10 year sentence, and he contends that did not receive that recommendation, the trial judge was undoubtedly aware of the terms of the plea agreement; his attorney put them on the record during the sentencing hearing, and the trial judge acknowledged them during the plea hearing.  Thus, Petitioner has not shown an actual and substantial disadvantage resulting from the purported breach.

For the foregoing reasons, the undersigned recommends that the Court find prejudice to be lacking and find procedural default to be appropriate.  Based on this recommendation, the undersigned finds it unnecessary to analyze the merits of the instant petition.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety WITH PREJUDICE.


DATE: October 1, 2010                              */s/  George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).